## Joseph Martini, Appellee, v. Donk Brothers Coal & Coke Company, Appellant.

1. VERDICTS—*supported by plaintiff's testimony alone.* Held, that a verdict will not necessarily be set aside although supported only by the testimony of the plaintiff contradicted by credible witnesses and other corroborative evidence.

2. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its contents are substantially contained in another instruction given.

3. INSTRUCTIONS—*ignoring material elements.* An instruction which concludes with a direction is properly refused if it ignores material elements or issues in the cause.

4. INSTRUCTIONS—*invading province of jury.* An instruction is properly refused which points out a particular thing that would constitute contributory negligence and prevent the plaintiff from recovery.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the HON. MORTIMER MILLARD, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911. Rehearing denied April 3, 1912.

WISE, KEEFE & WHEELER, for appellant; MASTIN & SHERLOCK, of counsel.

DAN MCGLYNN, for appellee.

140    APPELLATE COURTS OF ILLINOIS.

Martini v. Donk Bros. Coal & Coke Co., 169 Ill. App. 139.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This was an action brought by appellee against the appellant in the City Court of East St. Louis, Illinois, for damages on account of an injury received by him on November 21, 1908. There were two trials, the first resulting in a verdict in favor of the plaintiff for $2,090, which verdict was set aside and a new trial granted. The second trial resulted in a verdict for the plaintiff for $1,000, upon which judgment was rendered and the cause appealed to this court by the defendant.

The declaration alleges in substance, that the defendant was operating a coal mine in Madison county, Illinois, and that in its said mine certain tracks were used for the purpose of handling empty cars thereon which were returned from the pit top after being unloaded; that a certain track, known by defendant as the run-around track, was used for the purpose of storing empty cars and making up trips of the same to be taken therefrom to the various rooms and working places of the miners employed in said mine, by means of an electric motor or engine, which motor and trips of cars were operated and controlled by a motorman of the defendant named Carpenter; that plaintiff was directed by the defendant to assist the said motorman in conveying loaded cars to the bottom for the purpose of being hoisted to the top, and trips of empty cars when taken from said run-around track to the various working places in said mine; that in performing such duties he was called a trip rider and was under the control of the motorman, and was unfamiliar and inexperienced with the duties of such position, and the dangers arising from uncoupling said cars, and wholly unfamiliar with the manner of handling empty cars on said run-around track; that defendant had a certain endless chain near the bottom of said shaft which it used for the purpose of moving empty cars when returned to the

bottom, and the said run-around track on which empties were stored, and defendant permitted empty cars from time to time to be thrown to and against other empty cars standing on said track, all of which the plaintiff, at the time complained of, was unfamiliar with and was inexperienced and had no notice or knowledge of the method employed by the defendant in handling said empty cars; that on the date aforesaid he was directed by the said Carpenter, motorman in charge of said motor, and whose orders he was bound to obey, to uncouple a certain number of cars in a string of empty cars then standing on said run-around track; that while attempting to make such uncoupling and while in the exercise of due care and caution for his own safety, and while without any notice or knowledge of the dangers of uncoupling such cars, under such conditions, certain other empty cars were run down on said run-around track against the empty cars thereon standing so as to push and shove the same against the cars which the plaintiff was trying to uncouple, whereby the plaintiff's right hand was bruised, mashed and wounded, and the bone broken, and the leaders and muscles of his wrist and hand were injured and destroyed, and that he was permanently disabled thereby.

The amended declaration is the same as the original except that in the amendment it is alleged that Carpenter carelessly and negligently ordered and directed the plaintiff to uncouple a certain number of cars in a string of empty cars then standing on said run-around track, and without instructing or warning the plaintiff of the dangers and perils ordinarily incident to said work, in the manner it was then being conducted.

Counsel for appellant claim, first, that the appellee did not make out his case by a preponderance of the evidence, as the law required he should do; second, that the court committed reversible error in refusing

to grant a new trial; third, that the court erred in refusing certain instructions offered by appellant.

We will consider the first and second of these claims together, as the determination of these matters depends upon a consideration of the evidence. There is not much dispute about the facts in this case, except as to what occurred just prior to and at the time that appellee was attempting to uncouple the cars.

It appears from the record, that the defendant's method of handling the coal at this mine was, that tracks were maintained at the bottom and on each side of the shaft to correspond with tracks set on the floor of the cage, when the cage was at rest, and would be on a level and constitute a continuous track over the cage; that when an empty car was sent down from the top and the cage was at rest, a loaded car was pushed on to the cage and against the empty car, and caused it to run off on to the tracks on the opposite side. When the car thus pushed off would go upon the tracks it was carried by its own momentum to a given point where a chain became attached to the car, which pulled it up an incline. The machinery was then released and the car continued to run down a decline; this track was partly on a curve so the empty cars which left the cage followed this curved track which would cause the cars to eventually be collected in the opposite direction from which they were started from the cage, and this was called the run-around track, and was where the empties were placed preparatory to distributing these empty cars to the various parts of the mine, as they were needed, to be filled with coal. A motor was in use at this mine which was operated by electricity. The motor would come in to this run-around, or storage track, after the empties and be coupled on to an empty car and this empty car was coupled to a number of other empty cars, in the same manner as freight cars are coupled together to be drawn by an engine. The coupler used to connect these

cars was a hook and link. The cars when placed on the run-around were hooked together by men kept there for that purpose, and when the motorman desired to take a trip of empty cars out into the mine he advised the helper how many cars he wished to take and it was his duty to cut off from this run-around track the number of cars the motorman desired. Each end of these cars is provided with a bumper; on one end there is a hook fastened in to this bumper and at the opposite end a link, so as to form a means of coupling the cars. On the day that appellee was injured, he had made six or seven trips with the motorman and uncoupled the cars as the motorman directed. This, however, was not the regular work of the helper but he had been assigned to that duty that day. He had helped in this same work on a former occasion about a half day or a day. It does not appear how long prior to this time that he assisted the motorman. It is claimed by appellee that on the day he was injured the motorman had hooked on to a string of cars and was pulling them out toward the main entry, and directed the appellee to go back and, when he stopped, to cut off a certain number of cars; that appellee went back for that purpose, and, as he claims, when the motorman stopped the train of cars he went in between two of the cars and pushed them apart a few inches so as to enable him to reach in and uncouple the cars, and that while doing this an empty car came over the run-around track from behind him and struck the cars in the rear that he was attempting to uncouple, and the bumping of the cars caused his hand to be caught between the bumpers and injured him. He says further, that he had no knowledge that this car was coming around and knew nothing about how the cars were operated from the shaft point to that point, and that he had not been instructed in this matter.

It also appears from the testimony of the motorman that he had not given appellee any instructions,

144     APPELLATE COURTS OF ILLINOIS.

Martini v. Donk Bros. Coal & Coke Co., 169 Ill. App. 139.

except about uncoupling the cars, and states that appellee was assisting him and under his charge and directions. It is claimed by appellant that at the time that appellee attempted to uncouple the cars he did not wait until the motorman stopped the cars but ran in while the cars were in motion and attempted to uncouple them, and that the stopping of the motor caused appellee's hand to be caught and injured. And the real point of dispute in this case, as appears from the argument of counsel for appellant and appellee, is whether or not the appellee waited until the motor had stopped before attempting to uncouple the cars, or whether he attempted to uncouple them while in motion; and upon this point the testimony is very conflicting. The motorman says that he directed appellee to wait until the motor stopped before attempting to uncouple; the appellee says that he did wait until the motor stopped before endeavoring to uncouple the cars, and that the cars were standing still at the time he attempted to make the uncoupling. The motorman also says that after stopping his train he waited two or three minutes for the signal from appellee to move up but received none, and after waiting a minute longer the appellee came up exhibiting his hand injured. The motorman said that it had been the custom while he was working as motorman to give the trip rider instructions what to do and that he did instruct the appellee about cutting off the cars but did not tell him anything about this endless chain, nor its operation, nor about the other cars being likely to come down. The only instruction given was to cut off the amount of empties needed.

John Mason, a witness for defendant, testified that appellee got hurt about half past twelve, and at that time he was at the end of the empties waiting for the motor to pull them down. That he did not see the motor come down or move the cars; that at the time appellee was hurt the cage was not running; that he

saw appellee attempting to uncouple the cars while the cars were in motion; that there were no empties coming down on the run-around track at that time, and that he was about five cars from appellee, and that he was alone at the time. But on cross-examination he was asked the question, "Didn't you testify on the former trial of this case that you and Ziegler had eaten your dinner out on the main entry, and that you were out there when the whistle blew and that both of you came in to the run-around just before the time Martini was hurt, is that what you said?" A. Yes, sir. (Appellee's brief, page 11, Rec. page 63.)

Fred Ziegler, a witness for appellant, testified that he and John Mason were engaged at work for appellant at the time appellee was injured, and that their business was to couple the cars as they would come in on the run-around, and says that he stood at the bottom where he could see the empty cars come down and that none came, and that no empty cars ran down around that track that bumped in the car that appellee was attempting to uncouple within a half hour, and that Martini was hurt twenty-five minutes to one. The place at which he was then standing was some distance from where appellee was hurt, and he does not claim to have been able to see appellee; that the cage had not been hoisted or moved for five minutes after half past twelve; but on cross-examination he says that there were a number of loads at the bottom to go up; that they had quit at twelve o'clock for the purpose of getting lunch, and that ordinarily five cages go up every minute; that for five minutes after the whistle blew they did nothing at the cage; that the cage did not move, but later on, as appears from page 67 of the record, he says that the cagers were there and that men were going up, but was unable to tell who they were; and also states that on the former trial he told that men were going up on the cage but afterwards admits that the question was not asked him.

On the cross-examination of appellee, after stating that cars came down and bumped the car that injured him, he says that he did not see the cars. Counsel for appellant and appellee have taken up the criticisms above referred to, of the opposite witnesses, respectively, and each insists that the testimony of the respective witnesses was weakened by the statements, called by each of them contradictions. It is quite apparent that the conduct and bearing of the several witnesses upon the witness stand, and their apparent fairness or want of fairness would have very much to do with determining who was telling the truth about this matter, and while it is true that some of the matters called contradictions are not very material, yet there may have been enough in their conduct to have satisfied the jury. At least we cannot say that the verdict of the jury is manifestly against the weight of the evidence.

Counsel for appellant has referred us to many cases holding that the Appellate Court will not permit a verdict to stand where the case rests upon the testimony of the plaintiff alone, and is contradicted by credible witnesses and other corroborated facts, but on examining these cases we find that in almost every instance there was some fact, either in the weakness of the testimony of the appellee or in some corroborating circumstance or fact in the testimony of appellant that influenced the court in the making of such decisions, but does not change the rule above announced with reference to the disturbing of the verdict of the jury.

It appears from the record that this case has been twice tried before a jury resulting in a verdict for appellee; that the trial court has heard the witnesses and had the opportunity to grant a new trial, if in his opinion the verdict was not supported by the evidence, and under the statements of this record we feel unwilling to disturb the verdict.

The next contention is that the court erred in the refusal of the first and second refused instructions, offered by appellant.  The first refused instruction is as follows:

"The court instructs you that you have no right to regard the defendant as negligent in this case simply because plaintiff was injured.  The mere accident to the plaintiff in this case is of itself no evidence of negligence on the part of the defendant."

Barring the use of the word "accident" this instruction would have been proper.  We think, however, this instruction was given in better form in the last of appellant's given instructions, the latter part of which says, "and you are instructed in this case that you have no right to say the defendant company was negligent solely because the plaintiff was injured while working for the defendant, the fact of his injury is not in itself proof of negligence on the part of the defendant, but on the contrary the plaintiff before he can recover must show by the greater weight of the evidence that defendant was guilty of negligence and that he himself was using ordinary care to save himself from injury."  There is no cause for complaint because of the refusal of this instruction, as the exact idea is herein expressed that was sought to be by the refused instruction.

It is claimed that appellant's second refused instruction should have been given, which is as follows:

"The court instructs you that in his declaration the plaintiff has charged that he was injured by the negligent order of the motorman Angelo Carpenter to uncouple a certain number of cars in a string of empty cars then standing on the run-around track, and that while plaintiff was attempting to make such uncoupling, and in the exercise of due care and caution for his own safety, certain other empty cars were run down on said empty track against said standing empty cars plaintiff was uncoupling so as to push them against the cars plaintiff was then attempting to un-

148        APPELLATE COURTS OF ILLINOIS.

Martini v. Donk Bros. Coal & Coke Co., 169 Ill. App. 139.

couple. You are instructed that if you believe from the evidence that the injury in this case was not due to the order or that plaintiff had notice or knowledge of the dangers and perils of uncoupling the cars under such circumstances, or if you find that the injury was occasioned by plaintiff attempting to uncouple the cars while in motion, or if you find from the evidence that no empty cars did come down and bump against the cars plaintiff was uncoupling, then in neither of these cases can plaintiff recover in this case then your verdict in that event should be for the defendant.''

The statement in this instruction of what is contained in the declaration is not very accurate as it omits from it some of the important elements of the charge that is made. The declaration not only alleges that the order was given by the motorman, but alleges that the appellee, to whom the order was given, was unfamiliar and inexperienced in the duties of a trip rider, and the dangers arising from the uncoupling of the cars and the manner of handling empty cars on said track, and we think that this instruction in attempting to state the declaration was erroneous in not including that element. Hirsch & Sons Iron Co. v. Coleman, 227 Ill. 149. We think this instruction is erroneous in that it limits a verdict, ignoring other acts of negligence alleged in the declaration and which the evidence tends to prove; and it is further objectionable in that it tells the jury ''or if you find that the injury was occasioned by plaintiff attempting to uncouple the cars while in motion'' that he could not recover. This part of the instruction is clearly erroneous, in that it points out a particular thing that would constitute contributory negligence and prevent the appellee from recovery. This kind of an instruction has often been condemned by our Supreme Court. That is purely a question of fact to be determined by the jury as to what particular thing, under all the circumstances, would constitute such contributory negli-

gence as to prevent a recovery, and we think the instruction was properly refused. Drainage Commissioners v. I. C. R. R. Co., 158 Ill. 353; West Chicago St. Ry. Co. v. Petters, 196 Ill. 298.

We are of the opinion that there is no reversible error in this record, and the judgment is affirmed.

*Judgment affirmed.*